**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOBBY GIRIFALCO** and **KAREN CLOSKEY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**EMPIRE TODAY, LLC**<br><br>*Defendant.* | Case No.<br>     2:26-cv-5272<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Bobby Girifalco and Karen Closkey ("Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendant Empire Today, LLC ("Defendant") and allege as follows:

1.       Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.       "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

1

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiffs bring this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by making telemarketing calls to Plaintiffs and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls.

## PARTIES

4.      Plaintiff Bobby Girifalco is an individual residing in the Eastern District of Pennsylvania.

5.      Plaintiff Karen Closkey is an individual residing in the Eastern District of Pennsylvania.

6.      Defendant is a limited liability company headquartered in Northlake, Cook County, Illinois that is registered to do business in Pennsylvania.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8.      This Court has general personal jurisdiction over Defendant because it has registered to do business in Pennsylvania.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of Pennsylvania.

## BACKGROUND

10.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.      A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

14.    The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15.    The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16.    A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025).

## FACTUAL ALLEGATIONS

17.    Plaintiff Bobby Girifalco is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.    Plaintiff Karen Closkey is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19.    At no point did Plaintiffs consent to receiving telemarketing calls from Defendant prior to receiving the communications at issue.

20.    Plaintiff Girifalco's telephone number, (484) XXX-XXXX, is a residential, non-commercial, landline telephone number.

21.    Plaintiffs use the telephone number for personal, residential, and household reasons.

22.    The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

4

23. That number is and has been on the Do Not Call Registry since over a year prior to the calls at issue.

24. Plaintiffs have never been customers of Defendant and never requested information regarding Defendant's products or services.

25. Despite that fact, Plaintiffs received multiple telemarketing calls to Plaintiff Girifalco's telephone number.

26. On July 14, 2025, at 10:30 a.m., Plaintiff Closkey answered a call from "US Home Services."

27. The call was made to Plaintiff Girifalco's (484) XXX-XXXX landline telephone number.

28. The call came from telephone number (925) 218-6943, which is a "spoofed" phone number.

29. When Plaintiff Closkey answered the phone, a female telemarketer stated she was providing free estimates for home improvement and asked Plaintiff Closkey what needed remodeling in her home.

30. Plaintiff used the alias "Leslie Nelson" to protect her privacy.

31. The call was then transferred to a senior supervisor identified as "Ana."

32. "Ana" told Plaintiff Closkey she would connect her to a local contractor.

33. "Ana" then had trouble connecting the call, the line went silent, and the call was disconnected.

34. Almost immediately after that call and on that same day, Plaintiff Closkey received another call from Defendant at that same telephone number.

35. "Ana" was on the line and explained to Plaintiff Closkey that the prior call was accidentally disconnected.

36. "Ana" said she would connect Plaintiff Closkey to a flooring contractor.

37. "Ana" then merged the call, connecting Plaintiff Closkey with the contractor.

38.    "Ana" entered in Plaintiff's zip code into an automated system in which a prerecorded voice requested entry of the same.

39.    "Ana" connected Plaintiff Closkey to Defendant Empire Today.

40.    Plaintiff Closkey first heard a prerecorded prompt which said, "Press "1" to schedule an appointment."

41.    "Ana" pressed 1 and an agent named "Linda" answered who identified herself as being from Defendant Empire Today.

42.    Plaintiff Closkey then asked for an appointment for a free estimate for the next day, July 15th from 9AM- 11AM, to affirmatively identify the caller as the Defendant and for no other reason.

43.    Plaintiff Closkey provided her cell phone number as the callback number.

44.    Approximately two hours later, however, Plaintiff Closkey called Defendant back directly to cancel her appointment.

45.    An agent named "Ramona" answered.

46.    Plaintiff Closkey asked when her appointment was and "Ramona" said July 15th 9AM to 11AM.

47.    Plaintiff Closkey explained that her landline number was called by "US Home Services" and then connected to Defendant.

48.    Plaintiff Closkey informed Ramona that the landline number is on the Do Not Call List.

49.    Ramona stated that they do not use third parties to call people.

50.    A floor supervisor (whose name was inaudible) also told Plaintiff Closkey that they do not use third parties to make telemarketing calls.

51.    The supervisor then said he would remove Plaintiff Closkey's landline number from their call list.

52.    Despite that fact, on August 21, 2025, Plaintiff Closkey received a call from (484) 460-2218 from the illegally and fictiously named "Home Services."

6

53.    Plaintiff Closkey answered the call and went through a similar prompt scenario as the previous call from July 14th.

54.    Plaintiff Closkey set the aforementioned appointment again with Defendant to affirmatively identify the identity of the company who was illegally calling Plaintiffs and for no other reason.

55.    The violative calls all came from the following spoofed numbers. Counsel for the Plaintiffs has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier (Spoofed) |
| --- | --- | --- | --- |
| 9252186943 | Y | S SULTANPUR | Vonage (S) |
| 4844602218 | Y | ALLENTOWN PA | Onvoy (S) |

56.    As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, since Defendant utilized "spoofing" to make the calls appear to come from out of service names and numbers, instead of the Defendant's name and numbers.

57.    Indeed, the Defendant appears to have spoofed several of the numbers, as will be revealed through discovery, to further hide their identity.

58.    With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because they are spoofed to unassigned phone numbers or do not connect at all. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendant.

59.    The calls were sent for the purpose of encouraging the purchase of home improvement services, including flooring services.

7

60. The calls used, at various points into the call, a prerecorded or artificial voice to initiate contact and induce engagement with live agents, including immediately prior to the transfer to Defendant Empire's scheduling department.

61. The calls were unwanted and nonconsensual encounters.

62. Plaintiffs never provided prior express consent, written or otherwise, to receive prerecorded calls telemarketing calls from Defendant.

63. Plaintiffs' privacy has been repeatedly violated by the above-described telemarketing calls and text messages.

64. Plaintiffs were harmed by Defendant's conduct because the calls were annoying, harassing, and a nuisance, and they occupied Plaintiffs' telephone line, storage space, and bandwidth, rendering their phone unavailable for legitimate communications, including while spending time with significant others, and performing other tasks.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

66. Plaintiffs bring this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an

8

individual to make a do not call request to Defendant during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of the Defendant (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiffs.

67.    **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

68.    **Typicality**: Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

69.    **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiffs.

70.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a.      Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.      Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c.      Whether Defendant sent calls using artificial or prerecorded voices;

d.      Whether Defendant should be held liable for violations committed on their behalf;

e.      Whether Defendant sent calls using inaccurate caller ID information as prohibited by law; and

f.      Damages, including whether any violations were performed willfully or knowingly, such that Plaintiffs and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

71.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members in each class, such that joinder of all members is impracticable.

72.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiffs satisfy the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

10

a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.      Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.      Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiffs and the National DNC Class)**

73.      Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

74.      It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

75.      Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be

11

initiated to Plaintiffs and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

76.     These violations were willful or knowing.

77.     As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiffs and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

78.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT II
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**
**(On behalf of Plaintiffs and the Telemarketing Caller ID Class)**

79.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

80.     It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

81.     It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

82.     Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiffs and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular

12

business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

83.     These violations were willful or knowing.

84.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiffs and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

85.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III

### Statutory Violations of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B)) on behalf of the Robocall Class

86.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

87.     The Defendant violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiffs and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

88.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

89.     The Plaintiffs and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

13

90.     Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment against Defendant for:

A.     Certification of the Classes as alleged herein;

B.     Appointment of Plaintiffs as representatives of the Classes;

C.     Appointment of the undersigned as counsel for the Classes;

D.     Damages to Plaintiffs and members of the Classes pursuant to 47 U.S.C. § 227(c)(5) and/or (b)(3);

E.     Injunctive relief for Plaintiffs and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), and/or (b)(3), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry, without transmission of lawful caller ID information, or using an artificial or prerecorded voice;

F.     Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future;

G.     Attorneys' fees and costs, as permitted by law; and

H.     Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 27th day of July, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com