**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOBBY GIRIFALCO and KAREN CLOSKEY, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>EMPIRE TODAY, LLC,<br><br>*Defendant*. | No. 2:26-cv-05272-MMB<br><br>Hon. Michael M. Baylson |

**DEFENDANT EMPIRE TODAY, LLC'S**
**REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Empire Today, LLC's ("Empire") Partial Motion to Dismiss targets Count II of Plaintiffs' Complaint, which alleges violations of the Caller-ID Rules, 47 C.F.R. § 64.1601(e). Defendant's Motion argued that the Caller-ID Rules lack a private right of action because (1) neither TCPA regulations, the Caller-ID Rules, nor their origin state that a private right of action exists, and the majority of courts agree; (2) a private right of action is contrary to the TCPA's purpose to protect consumers' rights "to avoid receiving telephone solicitations *to which they object*" because it would provide a right of action to persons who did *not* object to receiving calls. 47 U.S.C. § 227(c)(1) (emphasis added); and (3) a private cause of action conflicts with 47 U.S.C. § 227(c) because it expands violations from the statutorily mandated prescription against "telephone solicitations" to the broader category of "telemarketing." [Doc. 8].

Plaintiffs' Response advances several arguments; none are convincing. Count II of the Complaint should be dismissed.

## II. ARGUMENT

### A. Plaintiffs' Response Argues An Implied Right Of Action By Default.

Neither the TCPA regulations (47 C.F.R. § 64.1200), Caller-ID Rules, nor the 2003 Report and Order[1] state the Caller-ID Rules were promulgated under Section 227(c); none state a private cause of action exists for the Caller-ID Rules. In fact, the 2003 Report and Order references consumer "enforcement" of do not call rules,[2] but not Caller-ID Rules. (Report and Order ¶ 91).

Plaintiffs' Response does not directly counter these facts. Instead, it argues that the Caller-ID Rules must be promulgated under Subsection 227(c) because neither Subsection 227(b) nor Subsection (d) specifically apply. (Pls.' Resp. at 3-7). Plaintiffs' argument rests on two core authorities, *Newell* and *Dobronski*, that came to the same conclusion. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025) (stating "Section 64.1601(e) thus fits best under § 227(c)"); *Dobronski v. Selectquote Ins. Servs*., 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) ("[N]o other subsection of § 227 fits better than subsection (c)."). *Dobronski* and *Newell*, however, were issued in a context that is absent here—competing arguments that the Caller-ID Rules were either promulgated under Subsection (c), which provides for a right of action, or Subsection (d), which does not. *Dobronski,* 773 F. Supp. 3d at 376; *Newell*, 791 F. Supp. 3d at 578. Presented with arguments that compelled a choice between Subsection (c) or (d), *Dobronski* and *Newell* chose the former. Empire, however, did not argue that the Caller-ID Rules were promulgated by § 227(d).

Plaintiffs' "cause of action by default" argument is unconvincing. First, it rests on the false dichotomy that the Caller-ID Rules must be promulgated under § 227(b), (c), or (d). Yet, another

---

[1] FCC Report and Order, CG Docket No. 02-278, FCC 03-153, *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

[2] The do not call rules refer to two violations. First, calls to persons who placed their number on the National Do Not Call Registry. Second, calls to persons who asked to be placed on company's Internal Do Not Call List, which referenced in the 2003 Report and Order as "Company Specific Rules."

source of authority exists. The TCPA amended the Communications Act of 1934, 47 U.S.C. § 201 *et seq*. *See* 2003 Report and Order ¶ 1 n.1; *see also* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). Under 47 U.S.C. § 201(b), the FCC "may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this *chapter*." (emphasis added). 47 U.S.C. § 201(b) as an authority carries no private damages remedy. The TCPA is in Chapter 5, Subchapter II, of Title 47. (*See* Def's Mtn. at 6 n. 6.) Tellingly, Plaintiffs' Response does not address this argument.

Second, Plaintiffs' argument ignores the obvious tension that the Caller-ID Rules do not "fit neatly into the focus" of Subsection (c) either. *Worsham*, 2016 WL 4592373, at *4. Even *Dobronski* conceded that Subsection (c) is not "an ineluctable fit"; rather, it was merely "a better fit than § 227(d)." *Dobronski,* 773 F. Supp. 3d 373, 378 (E.D. Mich. 2025); *see also Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 581 (E.D. Pa. 2025) (stating that the Caller-ID Rules "fit[] more readily under § 227(c)"). This tension strongly suggests that Subsection (c) is not the basis for the Caller-ID Rules, as noted in cases like *Worsham* and *Meyer* that wrestled with § 64.1601(e) not really belonging Subsection (b) or (c). *Worsham*, 2016 WL 4592373, at *4; *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017). It is just as likely that the FCC merely intended to "ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time." *Worsham v. Travel Options, Inc.,* No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), aff'd, 678 F. App'x 165 (4th Cir. 2017).[3] This lack of clarity shows there is not a private right of action; it is not an invitation to imply one.

[3] Plaintiffs' argument that the Caller-ID Rules are part of the TCPA because it incorporates the definition of "telemarketing" codified at 47 C.F.R. § 64.1200(f)(13) lacks any supporting authority and is not

Third, Plaintiffs' Response does not explain why the 2003 Report and Order, which was the origin of the Caller-ID Rules, does not link the Caller-ID Rules to § 227(c). Instead, Plaintiffs' Response employs hand-waving and exclaims that the 2003 Report and Order "references [Subsection] 227(c) no fewer than *fifty-four times* and references Section 227(d) only *once*." (Pls.' Resp. at 8). Again, Defendant does not argue that the Caller-ID Rules were promulgated under Subsection (d). The FCC did not act under (c) and (c)(5) only reaches rules prescribed under subsection (c). But that Subsection 227(c) was mentioned so often, *except* when discussing the Caller-ID Rules, severely undercuts Plaintiffs' argument that there is an implied right of action for the Caller-ID Rules. (Pls.' Resp. at 7).

Plaintiffs' Response also argues that it would be "incongruous" to hold that the 2003 Report and Order "that adopted the National Do Not Call Registry Rules . . . created a private right of action for the Do Not Call requirements but somehow failed to create one for the caller ID requirements adopted at the same time." (Pls.' Resp. at 9). But, again, the 2003 Report and Order is clear that it was promulgating the National *Do Not Call* Registry Rules and Company Specific *Do Not Call* Rules under Subsection 227(c). The first paragraph discussing the National Do No Call List mentions § 227(c) four times. (Report and Order ¶ 16). The 2003 Report and Order does not directly reference § 227(c) when discussing the Company Specific Do Not Call Rules; instead, it begins its discussion of the Company Specific Rules (¶ 86) by referencing its 1992 Order, which both references § 227(c) *and* a private cause of action for violating Company Specific Do Not Call Rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8766-8767, ¶ 24 (1992). When referring to the Caller-ID Rules, however, the 2003 Report and Order does not mention § 227(c) or a private right of action. It only states that they "will

---

persuasive. Simply adopting a single definition does not pull the entirety § 64.1601(e) into § 64.1200. The FCC defined "telemarketing" once; there is no need to do so again.

improve the ability of consumers to identify and enforce *do-not-call* rights against telemarketers." (Report and Order ¶ 91) (emphasis added). Consumer enforcement was not referenced for the Caller-ID Rules themselves.[4]

Defendants contend it would be more incongruous to craft a TCPA private cause of action from such silence, particularly the Report and Order repeatedly notes a cause of action for do not call violations, yet not for § 64.1601(e), which is not even in the TCPA regulations. *See Reyes-Gaona v. N. Carolina Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) ("[T]he doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.") "Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC 'absent mindedly forgot to mention an intended private action.'" *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979)).

It was not until 2025, 22 years after the 2003 Report and Order, that a private cause of action was discovered for the Caller-ID Rules. *See Dobronski,* 773 F. Supp. 3d 373. Defendant submits that 22 years of silence is telling, and that the belated discovery of a private cause of action by a minority of courts comes from creative argument; not the statute, regulation, or FCC orders.

---

[4] The FCC, however, has filed enforcement actions for Caller-ID Rule violations. *See, e.g., In the Matter of Travel Club Mktg. Inc.: Notice of Apparent Liability for Forfeiture*, FCC 11-163, 26 FCC Rcd 15831 (2011). Notably, this enforcement action does not cite § 227(c).

**B. A Private Right of Action for a Caller-ID Rules Conflicts With § 227(c).**

As outlined in Defendant's Motion, Congress authorized the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." 47 U.S.C. § 227(c)(1) (emphasis added).

The Caller-ID Rules, 47 C.F.R. § 64.1601(e)(1), however, are broader. It states that "[a]ny person or entity that engages in *telemarketing* . . . must transmit caller identification information." 47 C.F.R. § 64.1601(e)(1) (emphasis added). "Telemarketing" does not contain the exceptions for calls with prior express consent, established business relationships, or by non-profit organizations found in the definition of "telephone solicitation" in 47 U.S.C. § 227(a)(4). Therefore, *if* the Caller-ID Rules have a private cause of action for mere telemarking, then the Caller-ID Rules apply to a broader category of conduct than prohibited by Section 227(c), and the FCC would be acting outside its § 227(c) mandate.

Plaintiffs' Response makes two counterarguments, neither of which is convincing. First, it cites 47 U.S.C. § 227(c)(1)(A)'s reference to rulemaking for "telephone network technologies." But this argument ignores 47 U.S.C. § 227(c)(1), which limits this rulemaking to "telephone solicitations." Indeed, the Report and Order itself limits enforcement to three contexts by stating that consumer may file suit "if an entity violates the TCPA prohibitions on the use of facsimile machines, automatic telephone dialing systems, and artificial or prerecorded voice messages and *telephone solicitation*. 47 U.S.C. §§ 227(b)(3) and (c)(5)." (Report and Order ¶ 5 n.7) (emphasis added). It does *not* say that a consumer can file suit for "telemarketing."

Second, the Response cites the Company Specific Do Not Call Rules,[5] § 64.1200(d), and argues they apply to calls "for telemarketing purposes," including calls to people with whom the

[5] This is often referred to as an Internal Do Not Call List.

caller has an "established business relationship." (Pls.' Resp. at 12). Plaintiffs state that § 64.1200(d) was promulgated under § 227(c) and that violations "can give rise to a TCPA damages claim." (*Id.*). In essence, Plaintiffs argue that because § 64.1200(d) applies to telemarketing, not just telephone solicitations, and does not include the "established business relationship" exception, the Caller-ID Rules, therefore, may also apply to "telemarketing."

Plaintiffs' argument is incorrect: § 64.1200(d) violations can *only* occur in the absence of an "established business relationship." 47 C.F.R. § 64.1200(f)(5)(i). The fact pattern for a § 64.1200(d) violation is as follows: (1) a person purchases or makes an inquiry about a company's products; (2) the company sends marketing messages to the person; (3) the person asks the company to stop calling, thus *ending the established business relationship* (47 C.F.R. 64.1200(f)(5)(i); and (4) the company calls again. Telling the company not to call not only ends the established business relationship,[6] but it ends any consent to call as well. Moreover, the FCC excepted tax-exempt nonprofit organizations from the company-specific rules. (2003 Report and Order ¶ 95).

In other words, § 64.1200(d) violations are completely consistent with the regulation of "telephone solicitations" because violations *only* apply to companies without either the requisite consent or an established business relationship, and tax-exempt nonprofit organizations are exempted. *See* 47 U.S.C. 227(a)(4). Plaintiffs' reference to § 64.1200(d), which is consistent with the prohibition against "telephone solicitations," only shows how a private cause of action for "telemarketing" for the Caller-ID Rules is inconsistent with Subsection 227(c). Relatedly, *Starling v. Homeover Gen. Contractors* did not "reject" the telemarketing versus telephone solicitation argument. (Pls.' Resp. at 13) (citing No. 4:25-CV-993-JDK, 2026 WL 1649101, at *4-5 (E.D.

---

[6] 2003 Report and Order ¶ 96

Tex. June 8, 2026)). Like *Newell* and *Dobronski*, *Starling* merely addressed "whether § 64.1601(e)(1) is a regulation 'prescribed under' § 227(c) or § 227(d)." *Starling*, 2026 WL 1649101, at *4.

Plaintiffs' attempt to distinguish *Zheng* also fails. Plaintiffs state that in *Zheng* "the regulation directly contradicted Congress's statutory command by rendering a category of persons ineligible for relief that Congress had expressly made eligible." (Pls.' Resp. at 13) (citing *Zheng v. Gonzales*, 422 F.3d 98, 117-20 (3d Cir. 2005)). Here, interpreting the Caller-ID Rules to have a private cause of action would contradict statutory command by rendering a broader category of calls—"telemarketing"—subject to a statute that only authorizes the FCC to regulate the narrower category of "telephone solicitations." 47 U.S.C. § 227(c)(1). Stated differently, if the Caller-ID Rules have a right of action for "telemarketing," then, like the Attorney General's regulation in *Zheng*, then the Caller-ID Rules would apply to a broader category of conduct than prohibited by § 227(c), so the Caller-ID Rules would exceed the FCC's mandate.

A private right of action for Caller-ID Rules is inconsistent with 47 U.S.C. § 227(c)(1).

### C. Inferring a Private Right of Action for the Caller-ID Rules is Inconsistent with the TCPA's Language and Purpose, and Leads to Absurd Results.

Defendant argues that a private cause of action for the Caller-ID Rules is inconsistent with the TCPA language and purpose, and leads to absurd results, for two reasons. First, because § 227(c)(5) provides for damages on a per call (*not* per violation) basis, the only persons who could recover for a Caller-ID Rules violation would be persons who receive "telephone solicitations" to which they did *not* object (*i.e.,* via the National Do Not Call Registry or a Company Specific Do-Not-Call request). Second, under Plaintiffs' theory, a person has a § 64.1601(e) claim, regardless of whether they have registered their objection to receive calls, simply because a "telemarketing" call was made without transmitting caller identification information including "either a CPN or

ANI and, when available by the telemarketer's carrier, the name of the telemarketer." *See* 47 C.F.R. § 64.1601(e)(1). Applying a statute designed to prevent people from "*receiving telephone solicitations* to which they object" to persons who did not object makes little sense. 47 U.S.C. § 227(c)(1) (emphasis added).

In response, Plaintiffs first argue they can recover for multiple violation of § 227(c). (Pls.' Resp. at 10) ("Nothing in the text requires that a subscriber who is already entitled to recover for an unwanted telephone solicitation must forgo a separate recovery for the caller ID violation that accompanied it."). But the law is clear—Subsection 227(c)(5) provides for damages on a per call (*not* per violation) basis. *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 365 (E.D. Pa. 2019). Plaintiffs cannot recover for multiple violation of § 227(c).

Plaintiffs next argue they can plead in the alterative under Fed. R. Civ. P. 8(d). But this argument dodges the core issue of whether there is a cause of action at all. Moreover, it fails to meet Defendants' inconsistency and absurdity arguments—that Plaintiffs' interpretation of the Caller-ID Rules allow everyone, regardless of whether they have registered their objection to receive calls, to have a claim under a statute designed to prevent people from "*receiving telephone solicitations* to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Plaintiffs' Response does not even explain how the Caller-ID Rules would prevent *receiving* telephone solicitations, nor could it because a the TCPA violation is complete once the call is received.

Plaintiffs' Caller-ID Rules interpretation means that persons who never objected to calls have a Caller ID claim, while persons who received calls to which they objected could not recover because § 227(c)(5) provides for damages on a per call (*not* per violation) basis. This result is inconsistent with the TCPA and leads to absurd results.

## III. CONCLUSION

For the foregoing reasons, as well as those outlined in Defendant's Brief in Support of its Motion to Dismiss, Defendant requests that Count II of the Complaint be dismissed with prejudice.

Respectfully submitted,

**BAKER & HOSTETLER LLP**
By: */s/ Alyse F. Stach*____________
Alyse F. Stach
E.D. Pa. Bar # 328562
1735 Market St., Suite 3300
Philadelphia, PA 19104-2891
Tel: (215) 568-3100
Email: astach@bakerlaw.com

Rand L. McClellan (pro hac vice forthcoming)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Email: rmcclellan@bakerlaw.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, a true and correct copy of Defendant Empire Today, LLC's Reply in Support of Its Partial Motion to Dismiss was served upon all counsel of record through the Court's CM/ECF system.

*/s/ Alyse F. Stach*
Alyse F. Stach